Matthew L. Weston (State Bar No. 268936)
MCBREEN & SENIOR
1900 Avenue of the Stars, Eleventh Floor
Los Angeles, California 90067
Telephone: (310) 552-5300
Fax: (310) 552-1205
mweston@mcbreensenior.com

Attorneys for Plaintiff
BONNIE LAMMERS

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BONNIE LAMMERS, | ) CASE NO. 14 CV 3464 |
| | ) |
| Plaintiff, | ) |
| | ) COMPLAINT FOR DECLARATORY |
| v. | ) RELIEF AND TO EXPUNGE CHARGING |
| | ) LIEN |
| WARREN BENSON LAW GROUP, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NATURE OF ACTION

1.     This action is a dispute between a False Claims Act relator and her former counsel regarding the parties' respective shares of the settlement proceeds from *United States ex. rel. Bonnie Lammers, MD v. Farideh Heidarpour*, No. CV 08-3411 WHA (DMR) (N.D. Cal. July 8, 2008).

## JURISDICTION AND VENUE

2.     This court has original jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of costs and interest, seventy-five thousand dollars.  Plaintiff Bonnie Lammers is

a citizen of Dallas, Texas. Defendant Warren Benson Law Group is a citizen of California, with its principal place of business in either San Diego or Los Angeles, California. The amount in controversy, exclusive of costs and interests, exceeds $75,000.00. This Court has ancillary jurisdiction because this is a fee dispute collateral to a case over which it has jurisdiction: *United States ex. rel. Bonnie Lammers, MD v. Farideh Heidarpour*, No. CV 08-3411 WHA (DMR) (N.D. Cal. July 8, 2008).

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) in that the original action, as well as relevant settlement negotiations, took place in this district. A substantial part of the events or omissions giving rise to the claim occurred in this district.

### INTRADISTRICT ASSIGNMENT

4. A substantial part of the events or omissions which gave rise to this claim, specifically the settlement negotiations for the Hebrard and Heidarpour Settlements (discussed *infra*) arose in San Francisco and Alameda counties.

### THE PARTIES

5. Plaintiff Bonnie Lammers is a resident of Dallas, Texas.

6. Defendant Warren Benson Law Group is an unincorporated association whose members are Donald R. Warren and Phillip E. Benson, both citizens of the state of California.

### GENERAL ALLEGATIONS

7. Bonnie Lammers ("Lammers") is the relator in *United States ex. rel. Bonnie Lammers, MD v. Farideh Heidarpour*, No. CV 08-3411 WHA (DMR) (N.D. Cal. July 8, 2008). Lammers sued her former employer and various other persons and entities in a

COMPLAINT
Case No. 14 CV 3464

False Claims Act action resulting from certain false billings the defendants sent to the Department of Labor-Office of Workers' Compensation Programs.

8.     On July 10, 2008, Lammers and the Warren Benson Law Group ("Warren Benson") entered into a Retainer Agreement.  Lammers retained Warren Benson to "prosecute her qui tam claims under the Federal False Claims Act, through trial, compromise or settlement, whichever occurs first, which client has against Advanced Physical Medicine & Rehab Group, Inc., Advanced Occupational Rehabilitation, Inc., Advanced Medicine and Rehabilitation of Texas, Inc., Advanced Medicine and Rehabilitation of Texas, P.A., Farideh Heidarpour, Michael Hebrard, M.D., Richard LaVigna, D.P.M., and Ali Heidarpour."  The Retainer Agreement further stated, "In consideration for the legal services to be performed by Attorneys as set forth herein, and Attorneys' agreement to be retained by client, Client agrees to pay Attorneys a contingency fee of 45% of the relator qui tam share of the government's recovery."  The Retainer Agreement also contained the following provisions regarding Warren Benson's attorney lien, "Client hereby grants Attorneys a lien on Client's claims and causes of actions for which representation is provided by Attorneys, to secure payment to Attorneys of all sums due under this agreement."

9.     The Warren Benson Retainer Agreement did not contain "[a] statement as to what extent, if any, the client could be required to pay any compensation to the attorney for related matters that arise out of their relationship not covered by their contingency fee contract."  Cal. Bus. & Prof. Code § 6147(a)(3).

**3**

COMPLAINT
Case No. 14 CV 3464

10. Lammers' Complaint for Violations of the False Claims Act 31 U.S.C. § 3730(b)(2) and (3) (the "*Qui Tam* Case") was filed on July 15, 2008. The United States intervened in the *Qui Tam* Case on October 31, 2011.

### **The Criminal Case**

11. Concurrent with the civil *Qui Tam* case, Lammers assisted the United States in the prosecution of a related criminal case against three of the *Qui Tam* defendants in the Western District of Oklahoma: *United States v. Heidarpour*, No. 5:11-CR-00109-M (W.D. Ok. Mar. 30, 2011) (the "Criminal Case"). Lammers' and Warren's involvement in the Criminal Case consisted of the following:

   a. On September 27, 2010, Warren spoke with an Assistant United States Attorney in the Western District of Oklahoma regarding Lammers' potential grand jury testimony in the Criminal Case.

   b. On September 28, 2010, Warren and Lammers had a conference call with the AUSA in the Western District of Oklahoma regarding Lammers' potential grand jury testimony.

   c. On October 3-5, 2010, Warren prepared Lammers for her upcoming grand jury testimony in the Western District of Oklahoma.

   d. On October 5, 2010, Lammers testified before the Grand Jury in the Western District of Oklahoma. Prior to testifying, Lammers met with the AUSA in the Western District of Oklahoma.

   e. On October 6, 2010, Warren discussed Lammers' grand jury testimony with the AUSA in the Western District of Oklahoma and Lammers.

f. On January 24, 2011, Warren discussed the Criminal Case with the AUSA in the Northern District of California.

g. On July 19, 2011, Warren discussed the Criminal Case with the AUSA in the Northern District of California.

h. On October 27, 2011, Warren discussed Lammers' grand jury testimony in the Criminal Case with an agent from the Office of Inspector General of the United States Postal Service.

i. On March 30, 2011, the United States filed the Criminal Case in the Western District of Oklahoma.

j. On May 14, 2012, Warren discussed Lammers' involvement in the Criminal Case with the AUSA for the Northern District of California.

k. On May 25, 2012, Warren again discussed Lammers' involvement in the Criminal Case with the AUSA for the Northern District of California.

l. On July 2, 2012, Lammers met with two Assistant United States Attorneys and two federal agents in Dallas, Texas to prepare for the upcoming trial in the Criminal Case. Lammers asked one of the Assistant United States Attorneys if she could attend the trial in the Criminal Case. The attorney stated that Lammers could not attend because her testimony could be influenced by other witness' testimony. Lammers asked if she could attend after she testified. The attorney again stated no. After this meeting, Lammers informed Warren that she could not attend the Criminal Case trial. Warren stated that this was not a problem because he routinely attended criminal trials for his qui tam matters, took notes, and called his

client at the end of each day to brief him/her on everything that had happened. "And everything that is discussed between us is not discoverable because it is all covered by attorney-client privilege." Lammers asked if Warren would accompany her to trial preparation with the Assistant United States Attorneys and he stated "no."

m. On June 19, 2012, Warren discussed Lammers' possible testimony in the Criminal Case with an agent from the Office of Inspector General of the United States Postal Service.

n. On June 26, 2012, Warren informed Lammers of the status of the Criminal Case.

o. On July 3, 2012, Warren prepared Lammers for her upcoming testimony in the Criminal Case.

p. On August 15, 2012, Warren discussed the plea agreement in the Criminal Case with Lammers and the AUSA for the Northern District of California.

### Civil Settlement No. 1: The Hebrard Settlement

12. On or about July 10, 2012, Lammers and the United States entered into a settlement agreement of the *Qui Tam* Case against Michael Hebrard, M.D., Richard Lavigna, D.P.M., Advanced Physical Medicine & Rehab Group, Inc., Advanced Occupational Rehabilitation, Inc., Advanced Medicine and Rehabilitation of Texas, Inc., and Advanced Medicine and Rehabilitation of Texas, P.A. ("Hebrard Settlement").

13. The total amount of the Hebrard Settlement was $3,180,000.00. The monies were due on or about the following dates:

    i. <u>July 25, 2012</u>: $1,000,000.00 to the United States and $30,000.00 to Warren Benson.

    ii. <u>July 15, 2013</u>: $537,500.00 to the United States.

    iii. <u>July 15, 2014</u>: $537,500.00 to the United States.

    iv. <u>July 15, 2015</u>: $537,500.00 to the United States.

    v. <u>July 15, 2016</u>: $537,500.00 to the United States.

14. The United States agreed to pay Lammers, as relator, 19% of each payment it received. Based upon information and belief, this percentage was based in part on Warren Benson and Lammers' assistance with the Criminal Case. The defendants paid $1,030,000.00 on or about July 23, 2012 and $1,000,000.00 on or about May 10, 2013. Warren Benson's and Lammers' share of the $1,030,000.00 has been distributed.

15. Lammers' share of the May 10, 2013 payment ($190,000.00) is currently in the Warren Benson trust account. The payment was received by Warren Benson after Warren withdrew as counsel in the *Qui Tam* Case and after Lammers had retained new counsel.

### **The Criminal Case Plea Agreement and Warren's Discharge**

16. On August 14, 2012, the United States entered into a Plea Agreement in the Criminal Case with *Qui Tam* Case defendant Farideh Heidarpour. Farideh Heidarpour pled guilty to one count of False Claims Act violations. Under the terms of the Plea Agreement, Farideh Heidarpour agreed, "In addition, at or before sentencing, Defendant [Farideh Heidarpour] will refund no less than $1,000,000 to the government for services paid by DOL-OWCP. The parties agree that the sum of $1,000,000 will be applied toward any civil recovery. Further, the parties agree that this refund does not represent a full monetary

**7**

COMPLAINT
Case No. 14 CV 3464

settlement of the civil qui tam action in Case No. C 08-03411 pending in the Northern District of California."

17. Based upon information and belief, the above language in the plea agreement reflects in part Warren's desire, expressed to the AUSA on August 15, 2012, to assure that $1,000,000.00 paid by Heidarpour in the Criminal Case represent a refund or restitution, as opposed to a criminal fine.

18. In August 2012, Lammers discharged Warren Benson. Lammers was concerned that Warren Benson's representation of her and disagreed with Warren's interpretation of the federal rules. Warren Benson filed a motion to withdraw in the *Qui Tam* Case on August 30, 2012, which included notice of his attorneys' lien. The Order Granting Motion to Withdraw was signed on September 17, 2012.

### **Settlement No. 2: The Heidarpour *S*ettlement**

19. On August 28, 2013, Farideh Heidarpour, Ali Heidarpour, and ABC Billing entered into a settlement agreement with the United States and Lammers ("Heidarpour Settlement"). Under the terms of the Heidarpour Settlement, the False Claim Act defendants agreed to pay $1,740,000. $1,000,000.00 was to be paid in accordance with the criminal Plea Agreement and the remaining $740,000.00 on or about the following dates:

- i. September 1, 2013: $160,000.00 to the United States and $40,000.00 to Lammers' counsel;
- ii. September 1, 2014: $270,000.00 to the United States;
- iii. September 1, 2015: $270,000.00 to the United States.

20. The United States agreed to pay Lammers, as relator, 19% of each payment it received under the Heidarpour Settlement. As of the date of this Complaint, Lammers'

**8**

COMPLAINT
Case No. 14 CV 3464

share of the initial $160,000 payment ($30,400.00), her share of the $1,000,000.00 payment from the Criminal Case ($190,000.00) and the $40,000.00 payment of attorney's fees are in Lammers' current counsel's trust account.

## **CLAIM 1**

## **APPLICATION FOR DECLARATORY RELIEF**

21. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 20.

22. Lammers and Warren Benson entered into a Retainer Agreement that is voidable under California law. The agreement does not contain a statement regarding payment for related matters. Warren Benson in fact performed work on a related matter, the Criminal Case. This work affected the amount of Lammers' final settlements. As a result, Warren Benson is entitled to collect a reasonable fee, but is not entitled to collect a contingency fee. There is an actual controversy between the parties within this Court's jurisdiction. Lammers requests a declaration of the legal relations of the parties with respect to the Retainer Agreement, rescission of the Retainer Agreement, and/or a declaration of the amount, if any, of Warren Benson's reasonable fee.

23. In the alternative, Lammers and the Warren Benson have competing interests in relator's share of the paid and unpaid monies from the Hebrard Settlement, the Heidarpour Settlement, and the plea agreement in the Criminal Case. The following monies are currently in attorney trust accounts:

      i.     $190,000.00, relator's share of a payment from the Hebrard Settlement, currently in the Warren Benson trust account;

COMPLAINT
Case No. 14 CV 3464

    ii.  $190,000.00, relator's share of a payment from the Criminal Case, in Lammers' current counsel's trust account;

    iii.  $30,400.00, relator's share of the initial payment in the Heidarpour Settlement, in Lammers' current counsel's trust account; and

    iv.  $40,000.00, attorney's fees from the Heidarpour Settlement, in Lammers' current counsel's trust account.

24. $1,150,000.00, plus interest, is still owed under the Hebrard Settlement and $540,000.00, plus interest, is owed under the Heidarpour Settlement. Lammers asserts that she is entitled all these monies. Based upon information and belief, Warren Benson disagrees. There is an actual controversy between the parties within this Court's jurisdiction. Lammers requests a declaration of the parties rights and obligations related to these monies.

## CLAIM 2

### APPLICATION TO EXPUNGE CHARGING LIEN

25. Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1 through 24.

26. Concurrent with its Motion to Withdraw in the *Qui Tam* Case, Warren Benson filed a notice of its charging lien. The charging lien allegedly covers Warren Benson's fees "on any future relator share award." In fact, the lien is voidable because the Retainer Agreement is voidable. There is a dispute between Lammers and Warren Benson as to the extent of the charging lien and to what extent, if at all, Warren Benson is entitled to the monies from the plea agreement and two settlements.

27. Lammers requests a declaration that the lien is invalid or unenforceable in whole or in part.

WHEREFORE, Bonnie Lammers prays for:

1. A declaration of the rights and legal obligations of the parties: (1) under the Retainer Agreement, if any, and the amount of Warren Benson's reasonable fees; and/or (2) to monies which have been and will be paid under two settlements agreements and a criminal plea agreement;

2. A declaration that Warren Benson's charging lien is invalid or unenforceable in whole or in part;

3. Costs of suit; and

4. Any such other relief as the Court deems just and proper.

DATED: July 31, 2014                    By: ___/s/ Matthew Weston____
                                        Matthew L. Weston
                                        mweston@mcbreensenior.com
                                        McBREEN &SENIOR

                                        Attorneys for Plaintiff
                                        BONNIE LAMMERS

**11**

COMPLAINT
Case No. 14 CV 3464